# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

PATRICIA JANE VANCE,     )
                               )
         **Plaintiff,**     )               **8:15CV115**
                               )
        **V.**              )
                               )
**CAROLYN J. COLVIN, Acting**     )     **MEMORANDUM AND ORDER**
**Commissioner of Social Security**     )
**Administration,**     )
                               )
        **Defendant.**     )
                               )

       Plaintiff Patricia Jane Vance claims in this Social Security appeal that the Commissioner's decision to deny her supplemental security income under the Social Security Act (the "Act") is contrary to law and not supported by substantial evidence. For the reasons explained below, the Commissioner's decision will be affirmed.

## PROCEDURAL BACKGROUND

       Plaintiff applied for benefits in October, 2011, alleging disability due to a nerve disorder. (Tr. 23, 205.) Plaintiff's applications were denied initially and on reconsideration. Plaintiff appealed the denial to an administrative law judge ("ALJ"). After an administrative hearing, the ALJ issued an unfavorable decision on August 1, 2013. (Tr. 31.)

       In his decision, the ALJ evaluated Plaintiff's claim using the "five-step" sequential analysis prescribed by the Social Security Regulations.[1] *See* 20 C.F.R. §§ 404.1520 and

---

[1] The Social Security Administration uses a five-step process to determine whether a claimant is disabled.

> At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform

[416.920](#).  In doing so, the ALJ found that Plaintiff has the severe impairments of inherited myopathy versus conversion disorder, adjustment disorder with mixed anxiety and depressed mood, and borderline intellectual functioning.  (Tr. 25.)  At step 3 of the sequential analysis, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or equals the severity of one contained in the Listings.[2]  (Tr. 26.)  The ALJ found that Plaintiff has the residual functional capacity ("RFC")[3] to perform a range of work activity that requires no more than a sedentary level of physical exertion, accommodates the use of a walker, and involves only unskilled, simple, routine, and repetitive work activity.  (Tr. 27.)  The ALJ stated that although Plaintiff has no past relevant work, there are jobs in the national economy that Plaintiff is able to perform.  (Tr. 30.)  Therefore, the ALJ concluded that Plaintiff was not entitled to benefits.

Plaintiff requested review of the ALJ's decision by the Appeals Council of the Social Security Administration ("Appeals Council").  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner of Social Security.

---

basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

[2] The Listings consist of an index of presumptively disabling impairments.

[3] RFC, or "residual functional capacity," is what the claimant is able to do despite limitations caused by all of the claimant's impairments.  *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000).
.

Plaintiff makes several arguments on appeal. First, she contends the ALJ failed to properly evaluate whether she met Neurological Listing 11.17, and Listing 12.05, which pertains to intellectual disability. Second, Plaintiff maintains that the ALJ's credibility determination is not supported by substantial evidence. Third, Plaintiff argues that the ALJ's RFC assessment is flawed because the ALJ improperly weighed the opinion of Plaintiff's treating physician. Finally, Plaintiff claims that the hypothetical question posed to the vocational expert was improper and does not constitute reliable, substantial evidence. The Court will consider each of these arguments below.

## ANALYSIS

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. *Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001) (quotation omitted). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* at 960-61. Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence exists for a contrary outcome. *See Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001).

### 1. Listings

Plaintiff argues that the ALJ improperly found, at step three of the sequential analysis, that Plaintiff's impairments did not meet or equal a Listing. "The claimant bears the burden of demonstrating that his impairment matches all the specified criteria of a listing." *McDade v. Astrue*, 720 F.3d 994, 1001 (8th Cir. 2013). "To establish equivalency, a claimant must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Carlson v. Astrue*, 604 F.3d 589, 595 (8th Cir. 2010) (quotation omitted). The Court finds that the ALJ's conclusions with respect to the Listings are supported by substantial evidence.

Plaintiff contends that the ALJ should have found her condition meets or equals a

Neurological Listing, in particular Listing 11.17.[4] This Listing encompasses "[d]egenerative disease not listed elsewhere, such as Huntington's chorea, Friedreich's ataxia, and spino-cerebellar degeneration" with "[d]isorganization of motor function as described in 11.04B" or "[c]hronic brain syndrome." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.17. Disorganization of motor function is defined as "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." *Id*.

The medical evidence supports the ALJ's conclusion that Plaintiff's condition does not meet the requirements of Listing 11.17. Plaintiff maintains that the medical evidence shows that she has neurological issues which cause her difficulty walking. However, for the most part, neurological testing has been normal. (Tr. 28.) Although a neurological examination in 2011 showed decreased sensation, weakness, and an abnormal gait, Plaintiff had mostly 5/5 strength in her extremities. (Tr. 256.) Further, an examination in 2012 showed a narrow gait, but muscle testing was 5/5, sensation was intact, and Plaintiff was able to lift herself from a seated to standing position without the use of her arms. (Tr. 28, 539.) After that appointment, there is no other evidence of treatment with a neurologist. While some evidence may suggest that Plaintiff has some difficulty walking, the "mere fact that some evidence may support a conclusion opposite to that reached by the Commissioner does not allow [a] Court to reverse the decision of the ALJ." *Johnson v. Colvin*, 788 F.3d 870, 873 (8th Cir. 2015) (quotation omitted).

Plaintiff also claims that the ALJ's opinion is cursory, and does not contain a sufficient discussion as to whether Plaintiff's condition meets Listing 11.17. She argues that this matter should be remanded so that the ALJ can provide a detailed analysis of evidence related to the Listing. In his discussion of the Neurological Listings, the ALJ did not go into much detail. However, the ALJ did state that he had evaluated medical and other evidence in conjunction with all the relevant severity criteria contained within the neurological series

---

[4] Plaintiff's briefing generally references "Neurological Listings." However, other than Listing 11.17, Plaintiff does not identify any other Neurological Listing that should have been specifically addressed. Due to this lack of specificity, the undersigned will only directly discuss Listing 11.17 in this Memorandum and Order.

of listed impairments. (Tr. 26.) The ALJ's discussion of medical evidence can be found in the portion of his opinion discussing Plaintiff's RFC.

Plaintiff seems to assert that the ALJ should not have considered the evidence related to the Listings in conjunction with the RFC determination. Plaintiff states that by doing so, the ALJ twisted the sequential analysis, which requires the Listings to be considered before the RFC. The undersigned disagrees that the ALJ actually formulated Plaintiff's RFC before considering the medical evidence related to the Listings. The fact that the ALJ's actual discussion of the medical evidence came later in the opinion was most likely motivated by a desire not to be redundant in his writing, especially in light of the overlapping nature of the medical evidence. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir.1996) (quotation omitted) ("An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where ... the deficiency probably had no practical effect on the outcome of the case."). The ALJ stated that he had considered the medical evidence when evaluating the Listings. The fact that his actual discussion of the medical evidence came later in the opinion is of no real significance under the circumstances here.

Plaintiff also claims that she should have been found disabled under Listing 12.05, which pertains to intellectual disability. In order to meet this Listing, a claimant must have an intellectual disability (which is defined as significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested prior to age 22). 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05.

With respect to intellectual functioning, the ALJ concluded that Plaintiff had not demonstrated the requisite deficits in adaptive functioning. (Tr. 27.) The phrase "deficits in adaptive functioning" has been defined as the "inability to cope with the challenges of ordinary everyday life." *Moore v. Colvin*, No. 4:12-CV-3132, 2013 WL 5466910, *12 (Sept. 30, 2013). Such challenges include the ability to "live independently, maintain a residence, shop, cook, and maintain appropriate grooming and hygiene." *Id*. In concluding that Plaintiff did not meet the Listing, the ALJ stated that Plaintiff had graduated from high school, got married, had children, and obtained a driver's license while completing the testing on a computer. (Tr. 27, 296.) The ALJ found that Plaintiff's abilities in adolescence indicated a level of low intellectual functioning, but did not rise to listing-level mental

retardation. (Tr. 27.) In so finding, the ALJ afforded great weight to the consultative psychological examination performed by David Bousquet, M.Ed. Bousquet diagnosed Plaintiff with borderline intellectual functioning and found that Plaintiff's mental impairment did not meet the diagnostic criteria for mild mental retardation. (Tr. 293, 298.)

Plaintiff testified at the hearing that she was able to take care of her personal hygiene, shower, and dress herself. (Tr. 68.) She also testified that she was able to shop with the use of a motorized cart. (Tr. 69.)

Considering the evidence before the ALJ, the Court finds substantial evidence supports the ALJ's determination that Plaintiff did not possess the requisite deficits in adaptive functioning to meet Listing 12.05. Although there is some evidence in the record that could arguably lead to the opposite conclusion, this is no basis for reversal. *See Moad, 260 F.3d at 890.*

### 2.      Credibility Determination

Plaintiff maintains that the ALJ erred in assessing the credibility of her subjective complaints. To assess a claimant's credibility, the ALJ must consider all of the evidence, including "prior work records and observations by third parties and doctors regarding daily activities, the duration, frequency, and intensity of pain, precipitating and aggravating factors, the dosage, effectiveness, and side effects of medication, and functional restrictions." *Lowe v. Apfel*, 226 F.3d 969, 971-72 (8th Cir. 2000). "The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole." *Id.* at 972. After reviewing the matter, the Court finds that the ALJ's conclusion that Plaintiff is not fully credible is supported by substantial evidence.

Plaintiff argues that the ALJ did not assess the full range of her restrictions in daily living. Plaintiff claims the ALJ ignored Plaintiff's testimony that she receives assistance with various things, such as cooking, household chores, and grocery shopping. However, the ALJ did cite valid reasons for discounting Plaintiff's credibility. The ALJ noted that Plaintiff's treatment had been limited, she had not seen a neurologist since early 2012, she

had not complied with her neurologist's recommendations (as there was no evidence of physical therapy or assessment by a neuropsychiatrist), and the record contained no mental health treatment.  (Tr. 28, 29.)  The ALJ also noted Plaintiff's activities of daily living included driving, shopping, eating out, and attending church.  (Tr. 29.)  Plaintiff also testified that she was able to shop with the assistance of a motorized cart, and was able to take care of her personal hygiene.  These are all proper considerations for evaluating a claimant's credibility.

Plaintiff also asserts that the explanations the ALJ provided for diminishing her credibility are not supported by the evidence.  In particular, Plaintiff contends that although there are notations in her medical records which indicate that physical therapy and a neuropsychiatrist assessment were part of her treatment plan, there is no evidence that her neurologist ever provided referrals for such treatment.  (Tr. 273-74, Tr. 540.)  Thus, according to Plaintiff, the ALJ should not have relied upon the absence of such treatment as a basis for rejecting her credibility.  The Court finds this argument unpersuasive.  Although there is no record of actual referrals, Plaintiff's failure to at least follow-up on her neurologist's recommendations suggests that her conditions are less severe than she claims.  Plaintiff's failure to participate in physical therapy is particularly telling given Plaintiff's complaints regarding mobility.  *See* *Gray v. Apfel*, 192 F.3d 799 (8th Cir. 1999) (finding that substantial evidence supported ALJ's determination that the claimant's subjective complaints of pain were not credible where the claimant failed to follow through with suggested rehabilitation treatment);  *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility").

The ALJ is responsible for deciding questions of fact, including the credibility of a claimant's subjective testimony about his or her limitations.  *See* *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination."  *Id.* at 714.  In this case, the ALJ pointed to substantial evidence in the record supporting his decision to discount Plaintiff's allegations.  As such, this Court defers to the ALJ's credibility finding.

### 3. RFC Assessment & Hypothetical Question

Plaintiff claims that the ALJ improperly assessed her RFC by failing to give great weight to the opinion of Dr. Tae Jung, Plaintiff's treating physician. "A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Medhaug v. Astrue,* 578 F.3d 805, 815 (8th Cir. 2009) (quotation omitted). However, a treating physician's opinion "does not automatically control in the face of other credible evidence on the record that detracts from that opinion." *Heino v. Astrue,* 578 F.3d 873, 880 (8th Cir. 2009). "An ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Id.* (quotation omitted).

The ALJ found that Dr. Jung's opinion was only entitled to partial weight. The ALJ accepted Dr. Jung's opinion that Plaintiff had worsening myelopathy with a poor prognosis, could lift 10 pounds occasionally, sit for eight hours, had no handling or fingering limitations, and would require the use of a walker. (Tr. 29.) However, the ALJ rejected Dr. Jung's opinion insofar as it indicated that Plaintiff could only stand/walk for one hour in an eight hour work day, would need to take breaks, and would be absent from work more than four times a month due to physical impairments. (*Id.*) The ALJ determined that those limitations were not supported by the evidence and appeared to be based on Plaintiff's subjective complaints, rather than objective findings. (*Id.*)

The record supports the ALJ's decision to give only partial weight to Dr. Jung's assessment. As noted in the ALJ's opinion, Plaintiff's neurological testing had generally been normal. Although a neurological examination in 2011 showed decreased sensation, weakness, and an abnormal gait, Plaintiff had mostly 5/5 strength in her extremities. (Tr. 256.) Further, an examination in 2012 showed a narrow gait, but muscle testing was 5/5, sensation was intact, and Plaintiff was able to lift herself from a seated to standing position without the use of her arms. (Tr. 28, 539.) In January, 2012, Plaintiff's neurologist witnessed Plaintiff fall, but stated in his notes that the fall appeared "very non-organic in nature." (Tr. 540.)

Plaintiff intimates that the ALJ did not rely on any medical evidence in reaching his conclusion. Plaintiff points out that the RFC assessment is actually more restrictive than the limitations found by the state agency experts. However, the ALJ was not required to squarely adopt one medical opinion. In formulating an individual's RFC, an ALJ should consider "all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quotation and citation omitted). The Court concludes that the ALJ considered all relevant evidence in formulating Plaintiff's RFC.

Plaintiff also contends that because the hypothetical question posed to the vocational expert failed to fully describe Plaintiff's impairments, the expert's testimony on Plaintiff's ability to work does not constitute substantial evidence to support a finding of no disability. "A hypothetical is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ." *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). The hypothetical adequately reflected the impairments that were consistent with the record as a whole. Therefore, the ALJ properly relied on the vocational expert's testimony in concluding that Plaintiff was not disabled.

## CONCLUSION

For the reasons stated, and after careful consideration of each argument presented in Plaintiff's brief, I find that the Commissioner's decision is supported by substantial evidence on the record as a whole and is not contrary to law.

Accordingly,

**IT IS ORDERED** that judgment shall be entered by separate document providing that the decision of the Commissioner is affirmed.

**DATED January 19, 2016.**

**BY THE COURT:**

**S/ F.A. Gossett**
**United States Magistrate Judge**